# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cr-00146-TWP-TAB |
| | ) | |
| TONY LANGSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

This matter is before the Court on Defendant Tony Langston's ("Langston") Motion to Revoke Detention Order (Filing No. 18). Pursuant to 18 U.S.C. § 3145(b), the District Court Judge has made a *de novo* review of the Magistrate Judge's Order of Detention (Filing No. 17). The Court has reviewed the record of the proceedings held on July 3, 2025, the Magistrate Judge's Minute Order and exhibits admitted during the hearing (Filing No. 16, Filing No. 16-1, Filing No. 16-2, Filing No. 16-3, Filing No. 16-4, Filing No. 16-5), the pretrial services report ("PS3") and recommendation of detention prepared by the United States Probation Office (Filing No. 15), Langston's Motion (Filing No. 18), and the Government's Response in Opposition with attachments (Filing No. 30). This Order provides the Court's findings of fact, conclusions of law, and order **denying** the Motion to Revoke Detention Order**.**

## I.    FINDINGS OF FACT

Langston was arrested on a criminal complaint charging him with Possession with Intent to Distribute 50 Grams or More of a Mixture or Substance Containing a Detectable Amount of Methamphetamine with the Intent to Distribute; Carrying a Firearm During and in Relation to a Drug Trafficking Crime; Possession of a Firearm by a Convicted Felon; and Possession of 40

Grams or More of a Mixture or Substance Containing a Detectable Amount of fentanyl (Filing No. 1). A detention hearing was held on July 3, 2025, wherein the Magistrate Judge determined that Langston had not rebutted the presumption of detention because there is probable cause to believe that Langston committed an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (Filing No. 17 at 2). The Magistrate Judge also found that no condition or combination of conditions will reasonably assure the safety of the community. The stated reasons for detention were as follows: the offenses involve a controlled substance and a firearm; the weight of the evidence against the defendant is strong; defendant's prior criminal history; prior violations of probation, parole or supervised release; and prior failures to appear in court as ordered. *Id*. at 3.

An indictment was returned on July 15, 2025, charging Langston with Count 1: Possession with intent to distribute a controlled substance (Methamphetamine) in violation of 21 U.S.C. § 841(a)(1); Count 2: Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c); Count 3: Felon in Possession of a Firearm, in violation of 18 USC 922(g)(1), and Count 4: Possession with intent to distribute a controlled substance (Fentanyl) 21 U.S.C. § 841(a)(1) (Filing No. 20).

The proffered evidence against Langston is as follows:

On January 27, 2025, Langston was pulled over in a traffic stop on suspicion that he was driving a stolen TRX vehicle. A license-plate scan conducted on the vehicle returned a grey 2017 Dodge Ram SR 1500 in Langston's name instead of what the car really was: a black 2022 Dodge Ram TRX. Indianapolis Metropolitan Police Department ("IMPD") officers seized and towed the vehicle. The VIN number located on the TRX's chassis revealed that the TRX was stolen and not a 2017 Dodge Ram. In an inventory search, officers located in the center console a loaded firearm

resting on top of 200 grams of suspected methamphetamine pills. Officers tested the firearm for DNA. Compared to Langston's buccal cells, it was 1 in a trillion times more likely that his DNA was on the firearm versus two unknown individuals (Filing No. 30 at 2).

Two days later, federal and state law enforcement officers executed a search warrant on Langston's home in Indianapolis. In the garage was a methamphetamine workstation: gloves, plastic containers, and a blender covered in methamphetamine residue; three pounds of caffeine, a known methamphetamine cutting agent; and a large pill press. A Chevrolet Trailblazer—also parked in the garage—contained two .223 caliber rifles (an Anderson model AM15 and a Great Lakes model CL15) and a Mossberg Model 500 12-gauge shotgun.

That same day, law enforcement officers obtained a search warrant for a Dodge Cargo Van registered in Langston's name at a storage facility. Inside the van were pills containing over 200 grams of fentanyl, two digital scales, plastic baggies covered in suspected narcotics residue, and a large pill press. Thereafter, Langston was arrested on state court charges of drug distribution and posted a $200,000.00 surety bond. There is nothing in the record to show that he was engaged in criminal activities following his release from state custody.

On June 30, 2025, Langston was arrested on a federal warrant (Filing No. 13). When the arresting officers called for Langston to exit his residence, Langston stayed inside his house for several minutes and then sat in a lawn chair on the front porch. The arresting officers contemplated calling the SWAT team to assist in his apprehension, but Langston did not resist arrest.

At Langston's detention hearing, Task Force Officer Wogan testified that the .223 caliber rifles were "high-powered" rifles—each containing standard magazines that could hold thirty rounds of ammunition. The Government proffered that Langston, a convicted felon, admitted to possessing all three firearms.

The PS3 reflects that since turning eighteen, Langston was convicted of at least five felonies, including theft and burglary (Filing No. 15 at 4–5). Langston has failed to appear in court seven times, and he failed to appear eleven times on various traffic misdemeanors. *Id*. at 4–6. The Probation Officer recommended as follows:

> The defendant is scored at Category 4 on a pretrial risk assessment, indicating a relatively high risk of flight and/or danger to the community. Due to the serious nature of the instant offense, history of failure to comply with previously imposed conditions of release, and history of failure to appear, there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community. Therefore, I respectfully recommend the defendant be detained.

*Id*. at 6.

Langston has not failed to appear for court since 2011, he is a life-long resident of Indianapolis and has a home to return to upon his release. Langston has not been convicted of a crime in the last 15 years, has had no contact with law enforcement in the last 12 years and has not violated any conditions of release imposed by a court since 2013. Langston has been married for one year and they are expecting their first child, he has significant family support and strong ties to the community. He is not presently on probation or parole and there are no pending cases against him other than this case. Langston recently completed a 16-week intensive outpatient drug treatment program—yet his attorney proffered that he is not a substance abuser. Although the PS3 lists Langston's employer as "unknown," his counsel proffered that Langston is a self-employed owner/operator of a box truck and transports freight to warehouses across Indianapolis.

## II.      CONCLUSIONS OF LAW

Pursuant to 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge, … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." The Court

conducts a *de novo* review of the magistrate judge's release or detention order and it need not defer to the magistrate's findings. *See, e.g.*, *United States v. Elliott*, 546 F. Supp. 2d 643, 643 (S.D. Ind. 2008). The Court must state in writing the reasons for the detention of a defendant. 18 U.S.C. § 3124(i).

The parties agree there is a presumption for detention as Langston is charged under the Controlled Substance Act, for an offense which has a maximum penalty in excess of ten years. *See* 18 U.S.C. § 3142(e). Thus, the burden of production lies first with the defense. If Langston is able to rebut the presumption of detention, the burden of proof then lies with the Government as to dangerousness by clear and convincing evidence, and as to flight by a preponderance of the evidence. The presumption that those conditions cannot be determined or found to reasonably assure appearance and safety does not disappear upon the production of some evidence but remains a factor in the case. On this point, the Seventh Circuit has adopted the thorough reasoning of the court in *United States v. Jessup*, 757 F.2d 378, 381 (1st Cir. 1985). *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986), and *United States v. Diaz*, 777 F.2d 1236, 1237 (7th Cir. 1985). Although most rebuttable presumptions found in the law disappear when any evidence is presented by the opponent of a presumption, the rebuttable presumptions of § 3142(e) are not such "bursting bubble[s]." *Jessup,* 757 F.2d at 383. Thus, even if a defendant has rebutted a presumption by producing some evidence, the court should still give weight to Congress's finding and direction that repeat offenders involved in crimes of violence or drug trafficking, as a general rule, pose special risks of flight and danger to the community. *Dominguez*, 783 F.2d at 707; *Diaz*, 777 F.2d at 1238; *Jessup*, 757 F.2d at 383.

The Magistrate Judge concluded that Langston is not a risk of flight, and that finding is not challenged. The Court thus considers only Langston's danger to the community.

Title 18, United States Code Section 3142, provides that a defendant shall be detained upon a showing, by clear and convincing evidence, that no conditions will provide for the safety of the community, and the court must consider the following factors under 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense…involves the possession or use of a firearm or destructive device (as those terms are defined in section 921);

(2) the weight of the evidence against the accused;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)-(3)(A), (B), and (4).

The Court has considered the evidence presented on the issue of release or detention and weighed both in accordance with the factors set forth in 18 U.S.C. § 3142(g) and the legal standards set forth above. Among the factors presented for the Court's consideration are Langston's character, his family ties, self-employment, length of residence in the community, community ties, past conduct, criminal history, and record concerning court appearances. *See* 18 U.S.C. § 3142(g)(3)(A).

The Court first considers the nature and circumstances of the offenses charged. The charges against Langston are serious. He is charged with possessing 50 grams or more of methamphetamine mixture with the intent to distribute, possessing a firearm in furtherance of a drug trafficking crime, possessing firearms as a convicted felon, and possessing 40 grams or more

of a fentanyl mixture with intent to distribute. Both drug charges carry five-year mandatory minimums. If convicted, the charge of possessing a firearm in furtherance of drug trafficking is punishable up to life imprisonment and distributing fentanyl and methamphetamine are both punishable by a maximum term of imprisonment exceeding ten years. *See* 18 U.S.C. § 924(c)(1)(D)(ii), and 18 U.S.C. § 3142(e)(3)(A), (B). Langston allegedly possessed multiple distribution amounts of fentanyl and methamphetamine—lethal, addictive drugs that cause high rates of overdoses. The serious nature and circumstances of the offenses weigh against Langston.

The Court next considers whether the weight of evidence against Langston is strong. The Court finds the Government's proffered evidence to be credible and its arguments persuasive. The offenses charged involve possession and drug trafficking large quantities of addictive and deadly controlled substances—methamphetamine and fentanyl—as well as the possession firearms in furtherance of drug trafficking activities. Langston also purportedly admitted to possession of the high-capacity firearms that were found in a vehicle located inside of his garage.

There are factors in Langston's history and characteristics that weigh in his favor. These factors include the length of his residence in the community and community ties. Further, at the time of the charged offenses and arrest, Langston was not on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law.

But there are also factors weighing against Langston as his characteristics show that he has previously violated the conditions of pretrial, probation, parole, and supervised release on numerous occasions. Albeit several years ago, he has failed to appear in court on numerous occasions. Although there is a gap in his criminal history, the criminal history is significant, and Langston has at least five prior felony convictions.

Next, the nature and seriousness of the danger to any person or the community that would be posed by Langston's release weighs in favor of detention. The reported stolen vehicle seized at the initial arrest had a loaded firearm placed on top of a large amount of methamphetamine, the garage of Langston's home contained a drug lab, and his work vehicle was also set up for mobile drug distribution. High-capacity firearms were found in a vehicle in his garage. The Seventh Circuit has held that the accessibility of the firearm; the type of weapon possessed; the status of the possession (legitimate or illegal); whether the gun is loaded; and proximity to drugs; reasonably support possession in furtherance of the drug trafficking operation. See *United States v. Seymore*, 519 F. 3d 700, 715 (7th Cir. 2008). As argued by the Government, the presence of firearms in the context of drug trafficking further escalates the level of danger associated with the offense. *United States v. Brooks*, 685 F. Supp 3d 476, 479 (E.D. Mich. 2023) ("The loaded semiautomatic pistol suggests a readiness to use or to engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors in the illicit drug trade.") Langston's alleged admittance to possession of high-capacity firearms—assault style weapons—presumably to protect his drug operations, increases the risk of danger to the community.

Based on this record, the Court cannot find that Langston is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). Langston has not rebutted the statutory presumption of detention.

The Court next considers whether any condition or combination of conditions exist which would reasonably ensure the safety of the community if Langston were released. The Court is cognizant that the United States Supreme Court has held that Congress did not intend pretrial detention to be punitive. *See United States v. Salerno*, 481 U.S. 739, (1987). This decision is not. As required, the Court has considered whether reasonable, less-restrictive alternatives to detention

exist, but finds that none exist in this case. *See* 18 U.S.C. § 3142(e); *United States v. Infelise*, 934 F.2d 103, 105 (7th Cir. 1991). A less restrictive measure such as home detention or electronic monitoring is not sufficient to ensure the safety of the community because Langston allegedly maintained a methamphetamine production station at his home—the same home that he would return to if released. He also possessed high-powered rifles in the garage of his home, and it appears that he was prepared to distribute drugs on the move in a stolen truck and in his work van, which contained over 200 grams of fentanyl, two digital scales, plastic baggies covered in suspected narcotics residue, and a large pill press.

Langston's counsel suggests that concerns regarding danger to the community can be addressed by prohibiting the possession of firearms and unlawful possession of controlled substances, and restricting travel to the South District of Indiana. (Filing No. 18 at 7).   However, Langston is a repeat felon who knew he was not to be in possession of firearms—yet he allegedly admitted to possession. Moreover, the multiple times when Langston's probation status was revoked based on new arrests and convictions show that he does not historically abide by prohibitions or conditions of release.

Finally, the Court gives deference to the recommendation of the probation officer, who after using a risk assessment tool, recommends that "due to the serious nature of the instant offense, history of failure to comply with previously imposed conditions of release, and history of failure to appear, there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community." (Filing No. 15 at 6).

Under these circumstances, the Court is convinced by clear and convincing evidence that Langston would not abide by any conditions of release. To protect the community from dangerous

criminal activity of drug possession, trafficking and possession of firearms, detention is appropriate.

### III.    ORDER

Upon *de novo* review, the Court concludes that Langston has not rebutted the statutory presumption that he is a danger to the community and finds that he should be detained upon a showing, by clear and convincing evidence, that no conditions will provide for the safety of the community if Langston were released.  The Court's *de novo* determination is that the Government has met its burden of proof in both respects and Langston's Motion to Revoke Detention Order (Filing No. 18) is **DENIED**.

    **SO ORDERED.**

Date:  8/6/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Brendan Sullivan
Office of the U.S. Attorney - Southern District of Indiana
brendan.sullivan@usdoj.gov

Leslie D. Wine
INDIANA FEDERAL COMMUNITY DEFENDERS
leslie_wine@fd.org