UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cr-00146-JRO-TAB |
| | ) | |
| TONY LANGSTON, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on a motion to suppress filed by Defendant Tony Langston.  Dkt. [43].  Langston faces four charges: (1) possession with intent to distribute a controlled substance (methamphetamine) in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); (3) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and (4) possession with intent to distribute a controlled substance (fentanyl) in violation of 21 U.S.C. § 841(a)(1).

Langston's motion to suppress arises from Indianapolis Metropolitan Police Department ("IMPD") Officer Marco Zaragoza's January 2025 traffic stop of his pickup truck on suspicion that it was a newer model—a 2022 Dodge Ram TRX—that did not match its Indiana registration—a 2017 Dodge Ram 1500 Big Horn.  Mismatched registration is a violation of Indiana law and may indicate a vehicle is stolen.  After IMPD impounded the truck to investigate theft, an inventory search revealed contraband forming part of the basis for the charges against Langston.  Langston now seeks to suppress "all evidence obtained as the

result of the unlawful stop, search and seizure of [his] vehicle and any subsequent unlawful search and seizures based upon the illegal stop of his vehicle." Dkt. 43 at 1. The issue is whether Officer Zaragoza's suspicion that the license plate belonged to another vehicle was reasonable.

The Court held an evidentiary hearing on March 26, 2026, to resolve issues of material fact regarding the depth of Officer Zaragoza's experience and training and his personal knowledge of the totality of the circumstances. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law. As explained below, the Court determines that Officer Zaragoza had an objectively reasonable suspicion that Langston's truck did not match its license plate registration. The motion to suppress is accordingly **DENIED.**

## I. FINDINGS OF FACT

Officer Marco Zaragoza has served as a patrol officer with IMPD for nearly eight years. He testified at the evidentiary hearing that based on his training and experience, he is familiar with the indicia of stolen vehicles, including "plates that do not match the vehicle." He also testified that he is a lifelong car enthusiast with a hobbyist's interest in different types of cars—including Dodge trucks—and their features, especially "high-performance, good-looking vehicles." His enthusiasm has led him to regularly attend car shows and pay attention to cars owned by his neighbors, one of whom owns a Dodge Ram TRX. The Court finds Officer Zaragoza to be a credible witness.

On January 27, 2025, Officer Zaragoza was patrolling traffic in a marked patrol car in the Irvington neighborhood of Indianapolis, focusing on East Washington Street between Emerson Avenue and Ritter Avenue. Officer Zaragoza testified that this block is in a high-crime area. While he was patrolling, he heard the sound of a supercharged engine taking off at a high rate of speed. As the vehicle caught up to him, it slowed down and maintained speed right next to the patrol car, not permitting Officer Zaragoza to get behind it—even when Officer Zaragoza slowed down below the speed limit. Officer Zaragoza observed that the vehicle was a black Dodge Ram TRX, a high-performance off-roading pickup truck, with heavy window tint. Officer Zaragoza thought the TRX was driving evasively. When a fire truck came by and all the traffic pulled over to the side of the road, Officer Zaragoza was able to get behind the TRX. He ran a license plate check on the TRX in the BMV's registration database, which showed the license plate was registered to a 2017 Dodge Ram 1500. The registration did not indicate that the truck had been rebuilt or modified in any way.

Officer Zaragoza immediately thought this discrepancy was odd because—based on his experience as a car enthusiast—he thought that TRX models of Dodge Ram pickups were not on the market before 2021. He suspected the TRX was displaying a license plate belonging to a different vehicle, which is a violation of Indiana traffic law. *See* Ind. Code § 9-18.1-4-5(a)(1). A mismatched license plate may also indicate a stolen vehicle, which Officer Zaragoza testified he was trained to investigate.

3

Officer Zaragoza testified that he continued to follow the TRX for a few miles while he took steps to confirm his suspicion.  He ran a Google search to confirm that Dodge did not sell TRX trucks in model year 2017; the first year of the TRX model was 2021.  He also testified that he visually observed a variety of features of the truck, both from the rear and from the side, while the truck and the patrol car were driving together down Washington Street.  These features distinguish the TRX model from the base level Dodge Ram, and they include a scoop hood (designed to assist in cooling the supercharged engine), wider fenders, a higher arch panel (the part of the fender structure that frames the wheel well), larger tires, a larger dual exhaust system, an off-road suspension, LED taillights, and different logo insignia on the tailgate.[1]  His research and his observation of these cosmetic and design features, combined with the revving of the supercharged engine that he had heard earlier—a signature feature of the high-performance engine of the TRX—corroborated Officer Zaragoza's suspicion that the license plate had been switched.  As he testified, "I could see a Dodge Ram TRX in front of me."

---

[1] At the evidentiary hearing, Officer Zaragoza compared photos of a retail model 2017 Dodge Ram 1500 Big Horn with IMPD's photos of the 2022 Dodge Ram TRX Langston was driving.  The photos show both trucks from similar angles.  *See* Appendix.  However, the evidence does not establish precisely which differences between the two models Officer Zaragoza independently observed on January 27, 2025.  The Court does not specifically find that Officer Zaragoza independently observed each of these features before the January 2025 stop.  Rather, his testimony, coupled with the photos admitted at the hearing, illustrates that he extrapolated from any differences he did observe based on his knowledge of high-performance trucks to reasonably infer that the truck he was following was a TRX and not an older model sporting modifications from a body kit.  *See* section II, *infra.*  His detailed testimony also supports his credibility as a car hobbyist.

4

Officer Zaragoza initiated a traffic stop, and the truck pulled over onto South Arlington Avenue. Officer Zaragoza identified the TRX's driver as Defendant Tony Langston. Officer Zaragoza informed Langston that the license plate did not match the TRX model Langston was driving. He looked at the truck's VIN stickers and paint job and questioned Langston about the truck and when he purchased it. He consulted by phone with Detective McFadden, who is in charge of vehicle theft investigations at IMPD. Officer Zaragoza then asked Langston to exit the vehicle so he could inspect the TRX further. When Officer Zaragoza asked about the truck's purchase price, Langston replied that he purchased the truck off the street for approximately $17,000 in cash, whereupon Officer Zaragoza told him that the retail price of a TRX is nearly $100,000. Officer Zaragoza's questions and observations during the traffic stop were consistent with the suspicion he articulated before the stop that the truck was a stolen TRX masquerading as a 2017 Dodge Ram. Per IMPD policy, he ordered the truck's impoundment for a theft investigation. Further investigation by IMPD confirmed that the truck was in fact stolen.

During the inventory search of the property inside the truck, the investigating IMPD detectives found a handgun and dealer quantities of fentanyl pills in the truck's center console. *See* Dkt. 47-7 at 9–10. Investigators later discovered additional contraband at Langston's home and a storage facility following warranted searches. Dkt. 47-8 at 6–8. The Government obtained these warrants using, in part, evidence seized during the inventory search of the TRX. *See* Dkt. 47 at 5; Dkt. 47-7 at 9–10. The discoveries during the searches of the

5

TRX, home, and storage facility form the essential basis for the charges against Langston.  Dkt. 1 at 4–8.  Langston affirmed at the evidentiary hearing that he only challenges the reasonableness of the initial traffic stop, not the sufficiency of the probable cause for these subsequent searches or seizures.

## II. CONCLUSIONS OF LAW AND DISCUSSION

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Because a traffic stop constitutes a "seizure" under the Fourth Amendment, it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."  *Whren v. United States*, 517 U.S. 806, 810 (1996).

A traffic stop comports with the Fourth Amendment "when the officer has reasonable suspicion that criminal activity is afoot, which can extend to violations of traffic laws."  *United States v. Miranda-Sotolongo*, 827 F.3d 663, 666 (7th Cir. 2016) (internal citations omitted).  Reasonable suspicion requires "some 'particularized and objective basis' for thinking that the person to be stopped is or may be about to engage in unlawful activity."  *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  The officer must "point to 'specific and articulable facts' that suggest unlawful conduct."  *Id.* (quoting *United States v. Uribe*, 709 F.3d 646, 649 (7th Cir. 2013)); *see also United States v. Cole*, 21 F.4th 421, 428 n.1 (7th Cir. 2021) (officer's "subjective intentions play no role" in constitutional analysis of traffic stop (quoting *Whren*, 517 U.S. at 813)).  "[T]he totality of the circumstances—the whole picture—must be taken into account."

6

*Cortez*, 449 U.S. at 417.  The Government has the burden to prove reasonable suspicion by a preponderance of the evidence.  *United States v. Jackson*, 962 F.3d 353, 357 (7th Cir. 2020).

Officer Zaragoza's suspicion that Langston's truck did not match its license plate and registration was reasonable based on the totality of the circumstances.  Officer Zaragoza observed specific, articulable details providing an objective basis for his assumption that the truck in front of him was a Dodge Ram TRX issued in model year 2021 or later, not a 2017 Dodge Ram as the registration indicated.  *See Miranda-Sotolongo*, 827 F.3d at 666.  He heard the sound of the supercharged engine that distinguishes the TRX line of Dodge Ram trucks from the base model.  He observed—from multiple angles—distinctive physical features of the truck body of a TRX model.  And before the stop, he confirmed through internet research that the TRX was not released in 2017.

Given these facts, Officer Zaragoza's suspicion that he was not looking at a 2017 Dodge Ram, so the truck's registration must have been swapped, was not a post hoc rationalization but rather a reasonable inference under the circumstances.  *Cf. Smith v. State*, 713 N.E.2d 338, 342 (Ind. Ct. App. 1999) (officer "had reasonable suspicion to believe" that a discrepancy between a vehicle's appearance and its registration meant it "could be stolen or retagged").  Officer Zaragoza's detailed testimony at the evidentiary hearing about the body differences between the two models, his well-supported interest in high-performance cars and their distinctive features, and the specific questions he

asked Langston during the stop itself, all confirm the credibility of his observations and his explanation of his suspicion at the time of the traffic stop.

Langston points to *United States v. Uribe*, 709 F.3d 646 (7th Cir. 2013), which held that a discrepancy between a vehicle's observed color and the color indicated on the registration, taken alone, does not establish reasonable suspicion warranting a traffic stop. *Id.* at 652. At the evidentiary hearing, Langston argued that *Uribe* should apply because it would be lawful to use after-market parts from a "body kit" to make a base model Dodge Ram resemble a TRX, and these modifications are the "functional equivalent of [the] color change" that the Seventh Circuit found insufficient to establish reasonable suspicion in *Uribe*. *See also* Dkt. 49 at 3–4; Dkt. 45 at 4–5.

The Court disagrees with Langston's application of *Uribe* here. Auto body modifications are not legally equivalent to a color change for the purpose of reasonable suspicion that a license plate is mismatched in violation of Indiana traffic law. *See* Ind. Code § 9-18.1-4-5(a)(1). The observation that a vehicle is different than its registered make and model is fundamentally distinct from the observation that the vehicle does not match its registered color. It involves the perception of a greater constellation of "specific and articulated facts" whose "cumulative weight" may be dispositive under the totality of the circumstances. *See United States v. Yang*, 39 F.4th 893, 901 (7th Cir. 2022).

Officer Zaragoza's testimony illustrates the cogency of this reasoning. He credibly testified that he observed multiple features of Langston's truck that were unique to the TRX model. He explained that transforming a base model Dodge

Ram into a TRX clone using a body kit would require each part to be purchased and replaced separately at significant expense and effort. He also pointed out that a truck displaying a license plate that does not match its make and model is a recognized sign of criminal activity. These are all facts indicating that Officer Zaragoza's suspicion was objectively reasonable. And unlike in *Uribe*, the Government presented evidence that Officer Zaragoza's training and experience—including his personal interest in cars—supported his inference of unlawful conduct. *See Uribe*, 709 F.3d at 651–52; *Miranda-Sotolongo*, 827 F.3d at 670–71.

Furthermore, to reasonably suspect a mismatched license plate, an officer need not refute every innocent explanation for a high degree of divergence between the vehicle's registered make and model and its actual appearance. "Police officers encounter situations of uncertain legality all the time." *Miranda-Sotolongo*, 827 F.3d at 668. Officers are not "require[d] . . . to rule out all innocent explanations," but can conduct investigatory stops consistently with the Fourth Amendment to "resolve ambiguous factual situations" where "the observed conduct could be either lawful or unlawful." *Id.* at 669. This is a "core reason the Constitution permits investigative stops," which are "permissible so long as it remains sufficiently probable that the observed conduct suggests unlawful activity." *Id.*; *see Yang*, 39 F.4th at 901 ("It has been 'consistently recognized that reasonable suspicion need not rule out the possibility of innocent conduct.'" (quoting *Navarette v. California*, 572 U.S. 393, 403 (2014))). Here, given the expense and effort it would take to retrofit a 2017 Dodge Ram to

9

resemble the high-performance TRX model Officer Zaragoza observed on January 27, 2025, it was reasonable for him to suspect that the registration was simply swapped.  His decision to act on that suspicion by executing a traffic stop was therefore constitutionally justified.

Officer Zaragoza's suspicion that the TRX and its license plate did not match, in violation of Indiana traffic law, was supported by a variety of specific, articulable facts.  The Fourth Amendment did not prevent him from investigating the discrepancy by initiating a traffic stop.

### III. CONCLUSION

For the reasons above, the Government has met its burden to show by a preponderance of the evidence that reasonable suspicion supported the traffic stop of Langston's truck.  *Jackson*, 962 F.3d at 357.  The Court accordingly **DENIES** Langston's motion to suppress, dkt. [43].

**SO ORDERED.**

Date: 4/21/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

William H. Dazey, Jr.
INDIANA FEDERAL COMMUNITY DEFENDERS
bill.dazey@fd.org

Bradley Paul Shepard
DOJ-USAO
brad.shepard@usdoj.gov

Nate Walter
DOJ-USAO
nate.walter@usdoj.gov

# Appendix

12



Government's Exhibit 1
2022 Dodge Ram TRX driven by Defendant Tony Langston



Government's Exhibit 2
TRX right rear view



Government's Exhibit 3
TRX front view



Government's Exhibit 4
TRX left side view



Government's Exhibit 5
2017 Dodge Ram 1500 Big Horn



Government's Exhibit 6
2017 Dodge Ram right rear view



Government's Exhibit 7
2017 Dodge Ram left front view